**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**


ST. CHARLES COUNTY, STATE )
OF MISSOURI, )
                              )
                Plaintiff, )
                              )
         vs.                  )      No. 4:04CV984-DJS
                              )
STATE OF WISCONSIN,           )
                              )
                Defendant. )


## ORDER

St. Charles County ("the County") filed this action against the State of Wisconsin to collect $5,421.86 in expenses the County allegedly incurred for jailing a fugitive for whom Wisconsin requested extradition. Now before the Court is Wisconsin's motion for judgment on the pleadings. A court reviewing a motion for judgment on the pleadings must accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party. Faibisch v. University of Minnesota, 304 F.3d 797, 803 (8th Cir. 2002). Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law. Id. Therefore, the Court will accept as true the following facts that were pled in plaintiff's First Amended Complaint.

On September 30, 1996, Jill Knutowski was convicted of various felony crimes in the Circuit Court of Racine County,

Wisconsin.  Ms. Knutowski was placed on probation for a period of four years, during which time the sentence for the crimes was withheld.  On August 1, 2000, Ms. Knutowski fled from Wisconsin to Missouri in violation of her probation.  Ms. Knutowski was arrested in St. Charles County, Missouri on August 6, 2000.  On September 20, 2000, Wisconsin applied for extradition and Ms. Knutowski was served with an extradition warrant on October 17, 2000.  On October 27, 2000, the County released Ms. Knutowski into the custody of an agent of Wisconsin.

Prior to being released into Wisconsin custody, Ms. Knutowski was held by the County for 83 days.  St. Charles County charges $50 per day for the incarceration of inmates, thus it seeks $4,150.00 for the housing of Ms. Knutowski.  In addition, the County incurred $1,271.86 in medical expenses on Ms. Knutowski's behalf.  To date, Wisconsin has not paid the $5,421.86 billed for Ms. Knutowski's incarceration and the County brought this action seeking to recoup the costs incurred.  The County, citing the Federal Extradition Act, 18 U.S.C. §3181 *et* seq., seeks monetary damages and injunctive relief.  Wisconsin argues that the County has failed to state a claim and that this action is barred by the Eleventh Amendment.

The Federal Extradition Act provides:

Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District, or Territory to which such person has fled . . . the

> executive authority of the State, District, or Territory
> to which such person has fled shall cause him to be
> arrested and secured . . . and shall cause the fugitive
> to be delivered to [the demanding authority.]

18 U.S.C. §3182.  Section 3195 provides that "[a]ll costs or expenses incurred in any extradition proceeding in apprehending, securing, and transmitting a fugitive shall be paid by the demanding authority."  The question presented is whether this statute creates a cause of action available to the County.  Whether the Federal Extradition Act creates a private cause of action available to a political subdivision of the asylum state is a question of first impression within the Eighth Circuit.

The Second and Tenth Circuit, the two Circuits that have considered this question, have reached different conclusions.  In Monroe County v. State of Florida, 678 F.2d 1124 (2d Cir. 1982), a divided panel of the Second Circuit concluded that the statue created an implied cause of action available to a county within the asylum state.  A unanimous panel of the Tenth Circuit in Colfax County Bd. of County Com'rs v. State of New Hampshire, 16 F.3d 1107 (10th Cir. 1994), held that the Federal Extradition Act did not create a cause of action by which a county of one state could maintain an action in federal court against another state relating to extradition.  For the reasons discussed below, the Court agrees with the conclusion reached by the Tenth Circuit and the dissent in Monroe County.

The right to extradition flows from the U.S. Constitution, Art. IV, §2, Cl.2, which provides:

> A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

By adoption of the Federal Extradition Act of 1793, Congress gave "procedural substance to the Constitutional framework." Colfax County, 16 F.3d at 1109. Under the Act, whenever the "executive authority" of a state makes demand "of the executive authority of any State, District or Territory" to which a person has fled, the "executive authority" of such "State, District or Territory" shall cause the person to be arrested and delivered to the agent of the demanding state. 18 U.S.C. §3182. "Simply as a matter of textual interpretation, the demanding state's obligation to pay extradition expenses runs only to the entity that is obliged to respond to the extradition demand -- namely, the executive authority of the state to which the fugitive fled." Monroe County, 678 F.2d at 1136 (Newman, J., dissenting). "Since neither the Constitution nor the statute imposes any obligation upon [a county] to honor [a state's] demand . . . the statute should not be read to create an enforceable obligation against [the demanding state] in favor of [a county]." Id.

Allowing a county within the asylum state to bring an action against the demanding state would "stand the whole

extradition process on its head." <u>Colfax County</u>, 16 F.3d at 1109-
10.  State governors, the executive authorities, play an "exclusive
role" in the extradition process.  <u>Id.</u> at 1110.  Inherent in this
exclusive role, is the discretion not to sue for extradition
expenses.  <u>See</u> <u>Monroe County</u>, 678 F.2d at 1137 (Newman, J.,
dissenting) ("[W]ith respect to matters like extradition each state
is accorded the opportunity to determine, as a matter of internal
state law, how the extradition obligation will be discharged and
how the costs of doing so will be borne.")  Some states "apparently
believ[e] that extradition expenses roughly balance out over time,
and that, even if they do not, the amounts involved are too slight
to justify either the costs of litigation or friction between
cooperating states."  <u>Id.</u>  The Act does not provide political
subdivisions of a state a means by which to circumvent the
extradition-related discretion granted exclusively to the executive
authorities of the states.

The County, citing the majority in <u>Monroe County</u>, argues
that it would be inequitable to hold that the Act does not create
a cause of action available to the County and that it would be left
without a means to recover the costs incurred.  As recognized by
Judge Newman, this argument is illusory:

> If [the County] has expended funds at the request of the
> State of [Missouri], there is no reason to doubt that the
> courts or the legislature of [Missouri] will afford a
> remedy.  And if they do not, the problem the County faces
> may never recur; once it is known that [Missouri] will
> not reimburse those who spend money . . . to assist in

discharging [Missouri's] constitutionally imposed
extradition obligations, [Missouri's] political
subdivisions are unlikely to extend wholehearted
cooperation in the absence of contractual commitments.
... Even if [Missouri] were to insist that its counties
render free service in apprehending fugitives, a federal
court, in the absence of clear legislative intent, should
not interpret §3195 to interfere with an internal policy
choice of the state as to how it chooses to discharge its
extradition obligations.

Id., 678 F.2d at 1136-37. "Congress may well have contemplated .

. . that officials of subdivisions would assist states in complying

with their extradition obligations, but that is not a sufficient

reason to infer that Congress authorized any entity other than the

state to maintain a lawsuit to recover expenses incurred in

rendering such assistance." Id. at 1136. The Act creates neither

an obligation for a county to assist in extradition nor a cause of

action by which a county may demand payment for its assistance.

Thus, as a matter of law, the County can not maintain a Federal

Extradition Act claim against Wisconsin.

Furthermore, even if a Federal Extradition Act cause of

action were available to the County, such a claim would be barred

by the Eleventh Amendment. The Eleventh Amendment provides that

"[t]he Judicial power of the United States shall not be construed

to extend to any suit in law or equity, commenced or prosecuted

against one of the United States by Citizens of another State, or

by Citizens or Subjects of any Foreign State." If the plaintiff

were the State of Missouri, it could bring suit against the State

of Wisconsin in the Supreme Court, which has original and exclusive

6

jurisdiction under Art. III, §2, Cl. 2 of the United States Constitution. The Supreme Court has held that the term "State" should not be read to include its political subdivisions. Illinois v. City of Milwaukee, Wis., 406 U.S. 91, 98 (1972). Rather, a county is a "Citizen of another State" within the meaning of the Eleventh Amendment. Monroe County, 678 F.2d at 1130-31.

The question here then is whether St. Charles County, as distinguished from Missouri, may, despite the Eleventh Amendment, bring suit in a federal district court against Wisconsin. Generally, "a State may not be sued without its consent." Ex Parte New York, 256 U.S. 490, 497 (1921). A waiver of sovereign immunity will be found "if the State voluntarily invokes [federal] jurisdiction . . . or if the State makes a 'clear declaration' that it intends to submit itself to [federal] jurisdiction." College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd., 527 U.S. 666, 675-76 (1999). In other words, "the State's consent [must] be unequivocally expressed." Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 99 (1984). Here, Wisconsin has not provided an unequivocal expression waiving its sovereign immunity and constructive waiver of sovereign immunity is not permitted. College Savings Bank, 527 U.S. at 680.

"A state's Eleventh Amendment immunity, however, is not absolute but subject to abrogation by Congress in its exercise of powers delegated to it by the states in the Constitution." Monroe

7

County, 678 F.2d at 1131. "Consequently, Congress can abrogate the Eleventh Amendment without the States' consent when it acts pursuant to its power to 'enforce, by appropriate legislation' the substantive provisions of the Fourteenth Amendment." Welch v. Texas Highway & Public Transp. Dept., 483 U.S. 468, 474 (1987). However, "Congress must express its intention to abrogate the Eleventh Amendment in unmistakable language in the statute itself." Atascadero State Hospital v. Scanlon, 473 U.S. 234, 243 (1985). In other words, Congress' intent must be "unequivocal and textual" and resort to legislative history is unwarranted. Dellmuth v. Muth, 491 U.S. 223, 230 (1989). In this case, plaintiff does not dispute that the Federal Extradition Act does not expressly abrogate the states' Eleventh Amendment immunity. See also Monroe County, 678 F.2d at 1133 ("It is true that the Federal Extradition Act does not expressly abrogate the states' Eleventh Amendment immunity.") Without an "unequivocal and textual" abrogation of the Eleventh Amendment the County is not entitled to bring its claims against Wisconsin, even if the Federal Extradition Act did provide the County with a cause of action.

Neither is the County entitled to the injunctive relief it seeks pursuant to Ex Parte Young, 209 U.S. 123 (1907). The County seeks prospective injunctive relief requiring Wisconsin to pay all costs and expenses in any future extradition proceedings involving the County or similarly situated agencies. Under Ex

Parte Young, "suits seeking prospective, but not compensatory or other retrospective relief, may be brought against state officials in federal court challenging the constitutionality of official conduct enforcing state law."  Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 145 (1993).  However, the application of Ex Parte Young is narrow and "has no application in suits against the States and their agencies."  Id. at 146.  As the County has brought suit against the State of Wisconsin, the doctrine of Ex Parte Young is inapplicable.  Therefore, Wisconsin is entitled to judgment as a matter of law on the County's claim for injunctive relief.

Accordingly,

**IT IS HEREBY ORDERED** that the State of Wisconsin's motion for judgment on the pleadings [Doc. #16] is granted.

Dated this  23rd   day of May, 2005.


/s/Donald J. Stohr
UNITED STATES DISTRICT JUDGE